Filed 11/2/20  P. v. Lopez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUBEN ALEJANDRO LOPEZ,<br><br>    Defendant and Appellant. | A157030<br><br>(Napa County Super. Ct.<br> No. 18CR003206) |

A jury convicted defendant of failing to appear in court while released on his own recognizance (Pen. Code, § 1320, subd. (b) ("1320(b)").[1]  On appeal, defendant contends (1) the trial court erred in denying his section 1118.1 motion for judgment of acquittal; (2) the court failed to sua sponte instruct the jury how to calculate the 14-day presumption period set out in section 1320(b); (3) the prosecutor committed misconduct during closing argument; and (4) the court violated his due process rights when it imposed fines and fees without determining his ability to pay.  We affirm.

---

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Charges and a Summary of the Trial Evidence

Section 1320(b) makes it a crime for a "person who is charged with . . . the commission of a felony who is released from custody on his or her own recognizance and who in order to evade the process of the court willfully fails to appear as required." The statute additionally provides: "It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance intended to evade the process of the court."

In the case underlying this appeal (case no. 18CR003206), the People charged defendant with a felony violation of section 1320(b) for failing to appear in another case (case no. 18CR001973) after being released on his own recognizance ("OR"). The People also alleged an enhancement for committing the offense while released on OR (§ 12022.1).

#### 1. The Prosecution's Case

During trial, the People called two witnesses whose testimony showed the following.

On June 20, 2018, the People filed a complaint charging defendant with a felony in case number 18CR001973.[2] That same day, the trial court arraigned defendant and released him on OR after he signed an OR release form requiring that he abide by various terms, including that he obey all orders of the court and immediately report to probation. Thereafter a week passed during which he did not report to probation. On June 27, a probation officer called defendant and left him a message. A petition was made to the

---

[2] The trial court prohibited disclosure of the nature of the felony count to the jury.

court to revoke defendant's OR release, and the court issued a bench warrant on July 2.

On July 6, 2018, defendant contacted the probation officer and claimed he was unaware he was on supervised release. Defendant appeared in court that same day, and the trial court recalled the warrant. The court permitted him to remain released pursuant to his OR agreement and ordered him to appear on July 19. Defendant appeared on July 19, and the court ordered him to appear on August 22 for a pre-preliminary hearing court date. Defendant failed to appear on August 22, resulting in the cancellation of the preliminary hearing scheduled for the next day, and the court issued another bench warrant. Defendant was arrested on September 5, and he next appeared in court on September 6, thus indicating defendant did not take care of the warrant until he was arrested on it.

In connection with the issue of whether the evidence supported application of section 1320(b)'s 14-day presumption, the prosecutor asked the court to take judicial notice that September 5 and 6, 2018 were 15 and 16 days, respectively, after August 22. The court declined that request but agreed to take judicial notice that August has 31 days in it.

### 2. *The Defense Case*

The defense called two witnesses. The first was the deputy sheriff who arrested defendant on the bench warrant on September 5, 2018. The deputy testified that defendant was cooperative during the arrest and did not try to evade him. Defendant did not appear to be suffering from any medical condition; he could walk and talk; and he appeared able to make a phone call.

Defendant also testified. On direct examination, he testified he had memory problems and was unsure about various things. For instance, he was unsure if he had to go to court because of his arrest in June 2018; he did

3

not recall exactly what happened at the arraignment on June 20 or having been told to report to probation; he did not recall receiving a copy of his OR agreement; and he did not recall going to court on July 6 or 19, 2018 or any other day. But defendant did remember some things, e.g., he remembered being told in court to check in with the public defender's office and he did so, and he recalled the probation department calling him in July 2018 and telling him he needed to report to probation. He testified that between July 6 and August 22, 2018, he reported for testing about nine or ten times at the behest of the probation department. Defendant also testified he moved residences about two months before the August 22 court date he missed, and his court paperwork was "probably tossed" in the move. Also, around August 22, he was working 40 to 50 hours a week, five days a week. When asked why he missed court, he testified he did not know he had court and it was an accident.

On cross-examination, the prosecutor elicited from defendant that he signed the OR agreement and knew about various terms of his OR release, including the important condition that he appear whenever ordered. Defendant partially complied with probation orders to undergo testing three times a week, by going for testing only nine or ten times between July 6 and August 22, 2018. Further, despite his alleged memory problems, defendant complied with most of the terms of his release and managed to come to court on July 19, 2018 as ordered. When the prosecutor asked defendant if his testimony was that his memory problems caused him not to come to court, defendant responded, "More than likely." Defendant testified he had never seen a doctor for memory problems, and he had no diagnosis for dementia or memory problems. On redirect examination, when asked if he would have

4

taken care of his warrant for failure to appear had he known about it, defendant responded, "More than likely."

### 3. *The Prosecution's Rebuttal*

In rebuttal, the prosecution had a witness read portions of the transcript of defendant's June 20, 2018 arraignment into the record, before having the transcript admitted into evidence. In short, the transcript reflected all of the following: The trial court asked defendant if he was listening, then after defendant affirmed he was, the court told defendant he was being put on supervised OR, and twice told him to report to probation immediately after being released, either that afternoon or the next morning if the probation office was closed by the time he was released. Defense counsel informed the court that she went through all the OR release conditions with defendant and that additionally he would be separately reading and signing the form with the conditions. When the court ordered defendant to appear on July 19 and 20, 2018, defendant responded, "okay." The court also cautioned defendant to take the OR conditions "very seriously," otherwise he would find himself back in court "probably . . . until the case is final."

### B. The Section 1118.1 Motion, Closing Arguments, and the Verdict

At the close of the People's case, defense counsel moved for acquittal. (§ 1118.1.) Defense counsel argued that there was no testimony concerning the requisite intent to evade, and that the prosecutor could not rely on the 14-day presumption set out in section 1320(b). Disputing the prosecutor's calculation of the days, the defense contended the August 22 court date that defendant missed did not count toward the 14-day period. Further, the defense claimed the presumption did not apply because defendant "availed himself to the court" by being arrested on September 5, which was within the 14-day period. The prosecutor opposed the section 1118.1 motion, arguing it

5

was proper to count August 22 toward the 14-day period. The prosecutor further argued the date defendant was arrested also counted toward the 14-day period because he did not avail himself of the court's process by being arrested.

The trial court denied the acquittal motion, reasoning in part that the instruction for section 1320[3] did not indicate whether the day a defendant fails to appear is counted toward the 14-day period. The court indicated it believed the issue of counting the 14-day period, and "whether it was 14 days versus 15 days," were facts for the jury to decide. Regarding the presumption, the court instructed the jury: "If you find the defendant willfully failed to appear within 14 days of the date assigned for appearance, you may, but are not required to, infer that the failure to appear was for the purpose of evading the process of the Court."

During closing argument, the prosecutor argued the evidence showed defendant's willful failure to appear to avoid the process of the court. In contending the section 1320(b) presumption applied, the prosecutor urged the jury to count August 22, 2018 (the day defendant missed court) as the first day of the 14-day period, and September 5 (the day defendant was arrested) as the fifteenth day. Defense counsel countered that the jury should use "common sense" to omit counting August 22 when calculating the 14-day period, and to find that defendant could not come to court on September 5 because he had been arrested. Defense counsel also contended that the presumption was a "technicality" and not mandatory and that defendant was entitled to the presumption of innocence. Further, counsel argued that if circumstantial evidence showed both that he had intent to evade and that he

---

[3]     (See CALCRIM No. 3002.)

6

did not have intent to evade, then the jury should choose the interpretation that benefited the defense.

The jury found defendant guilty of the section 1320(b) count and found the section 12022.1 enhancement true. At sentencing, the trial court granted defendant's motion to reduce the felony count to a misdemeanor pursuant to section 17, dismissed the section 12022.1 enhancement, and sentenced defendant to 365 days in county jail. Defendant appealed.

## DISCUSSION

### A. The 14-Day Presumption Period

As indicated, section 1320(b) makes it a crime for a person charged with a felony who is released on OR "to evade the process of the court" by "willfully fail[ing] to appear as required." The statutory presumption at issue here provides: "It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance intended to evade the process of the court." (§ 1320(b).)

Despite section 1320(b)'s mandatory phrasing, case law requires courts to instruct on the statutory presumption in permissive language. (E.g., *People v. Forrester* (1994) 30 Cal.App.4th 1697, 1703 (*Forrester*).) Accordingly, the trial court below instructed the jury: "If you find the defendant willfully failed to appear within 14 days of the date assigned for appearance, you may, but are not required to, infer that the failure to appear was for the purpose of evading the process of the Court."

Contrary to the prosecutor's method of calculating the 14-day period, defendant argues that August 22, 2018 (the day he missed court) did not count toward the 14-day period pursuant to Code of Civil Procedure section 12. He acknowledges he did not actually appear in court until September 6, the fifteenth day after and excluding August 22, but contends that, in light of

7

defense counsel's two arguments about why the presumption should not apply, the trial court should have resolved the issue as a matter of law rather than leave it up to the jury to decide. He claims the court's failure to resolve this issue caused three prejudicial errors. We address each claim, in turn, below.

### 1. *The Motion for Judgment of Acquittal*

First, defendant contends the trial court's failure to resolve how the 14-day period should be calculated and failure to find the presumption inapplicable caused it to erroneously deny his motion for judgment of acquittal (§ 1118.1). This is so, he alleges, because aside from the presumption, there was no other evidence that he intended to evade the court's process when he failed to appear. We are unpersuaded.

We review a court's decision, not its reasoning. (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517.) "A motion under section 1118.1 seeks a judgment of acquittal for insufficient evidence." (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 132, italics omitted.) "An appellate court reviews the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction. [Citation.] 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.] "[I]f the

8

circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citation.] Review of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence as it stood at that point." (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

Here, regardless of whether the 14-day presumption applied, there was substantial circumstantial evidence that defendant failed to appear with the intent of evading the process of the court. Evidence of intent is rarely direct; it is usually inferred from circumstances. (*People v. Canizales* (2019) 7 Cal.5th 591, 606.) " '[C]ourts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.' " (*United States v. Williams* (2008) 553 U.S. 285, 306; see § 29.2, subd. (a).)

In this case, at the time the defense made the section 1118.1 motion, the evidence showed defendant was charged with a felony, and he was released on OR on June 20, 2018 after signing a written OR agreement setting out terms for his release, including his agreement to obey all orders of the court and immediately report to probation. After failing to report to probation, a probation officer telephoned defendant on June 27 and left a message for him to call back. Over a week later, on July 6, defendant called that probation officer back and claimed he was unaware he was on supervised release. The probation officer then informed him that a warrant issued and explained how to clear it. On July 6, defendant went to court to have the warrant recalled. At the hearing, the court allowed defendant to

9

remain on OR under the terms of his prior agreement and ordered him to appear on July 19. Defendant complied and appeared on July 19, and the court ordered him to appear on August 22. After failing to appear on August 22, another warrant issued. Defendant made no attempt to address that warrant and did not appear in court until September 6, 2018, the day after he was arrested.

It is eminently reasonable to infer from these circumstances that defendant failed to appear intending to evade the process of the court. The evidence clearly shows defendant was told and knew he had to appear in court on August 22. Defendant was capable of appearing or communicating (by phone or in person) regarding his court matters, yet he made no attempt to do so until he was arrested two weeks after his missed appearance. Since this evidence would amply support a jury's determination that defendant sought to evade the process of the court by willfully failing to appear as required—independent of the 14-day presumption—we need not and do not address whether the trial court erred in concluding the correct method for counting the 14-day period and applying section 1320(b)'s presumption was a question of fact for the jury.

We conclude the trial court did not err in denying the section 1118.1 motion.

### 2. Sua Sponte Instructional Duty

Next, defendant argues the trial court erred by failing to sua sponte instruct the jury how to calculate the 14-day presumption period in section 1320(b) by instructing about counting pursuant to Code of Civil Procedure section 12, which provides: "The time in which any act provided by law is to be done is computed by excluding the first day, and including the last, unless the last day is a holiday, and then it is also excluded." He argues

10

this amounted to a misstatement of an element of the charged offense in violation of defendant's federal constitutional rights requiring review for prejudice under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

We review this claim of instructional error de novo. (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

" '[T]he language of a statute defining a crime or defense is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification. If the jury would have no difficulty in understanding the statute without guidance, the court need do no more than instruct in statutory language.' [Citations.] [¶] The rule to be applied in determining whether the meaning of a statute is adequately conveyed by its express terms is well established. When a word or phrase ' "is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request." ' [Citations.] A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning. [Citation.] Thus, . . . terms are held to require clarification by the trial court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance." (*People v. Estrada* (1995) 11 Cal.4th 568, 574–575 (*Estrada*).)

Here, the trial court instructed the jury with the statutory presumption in the language of section 1320(b), modified in accord with case law that requires the presumption be restated in permissive language. (*Forrester*, *supra*, 30 Cal.App.4th at p. 1703; CALCRIM No. 3002.) The record contains no indication that defense counsel ever requested an instruction beyond the standard section 1320(b) instruction to explain how to count the 14-day

11

period.[4]  Defendant contends the court should have sua sponte instructed with Code of Civil Procedure section 12, to clarify the phrase "within 14 days," but that phrase has no technical, legal meaning that differs from a nonlegal meaning and defendant cites no authority to the contrary. Defendant himself acknowledges that the method of counting set out in Code of Civil Procedure section 12 "essentially tracks ordinary language usage," yet he argues, in essence, that sua sponte instruction was required because the phrase was "technical enough" that Code of Civil Procedure section 12 exists, and the court was unsure about how to count the days and that the parties disagreed about it.  Thus, defendant argues, further instruction should have been given.  But this misconstrues the standard. (*Estrada*, *supra*,11 Cal.4th at pp. 574–575.)

Defendant cites *People v. Rangel* (2016) 62 Cal.4th 1192 for the proposition that a trial court "must instruct on the general principles of law relevant to the issues raised by the evidence, which are those principles vital to the jury's consideration of the evidence before it."  But *Rangel* said nothing specifically about instructing on the language at issue in this case—i.e., "within 14 days"—and *Rangel* also determined instructions " 'not vital to the jury's ability to analyze the evidence . . . are not instructions that must be given . . . even in the absence of a request.' " (*Rangel*, at p. 1224.)  Again, the language at issue here—"within 14 days"—means the same thing in common

_____

[4]	In his reply brief, defendant denies his attorney failed to request an amplifying instruction, but provides no record citations to support this denial. While defendant points out that defense counsel argued the prosecutor's method of counting was wrong, such argument did not amount to a request for an *instruction* pursuant to Code of Civil Procedure section 12.  Indeed, the record does not reflect any mention of Code of Civil Procedure section 12 by his counsel.

12

parlance as in the statute. Defense counsel himself argued to the jury that the counting of the 14-day period was a matter of "common sense."

In sum, the court had no duty to give sua sponte instruction patterned after Code of Civil Procedure section 12.

### 3. Prosecutorial Misconduct

Defendant claims the prosecutor committed misconduct by misstating the law when arguing to the jury that it should count the August 22, 2018 hearing date toward the 14-day presumption period in section 1320(b).

" '[I]t is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.] To establish such error, bad faith on the prosecutor's part is not required. [Citation.] '[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667.)

Here, we agree with defendant the prosecutor erred in arguing that the day defendant missed court—August 22, 2018—should be counted as the first day toward the 14-day presumption period. "The ordinary rule for computing the time within which a required act must be performed is to exclude the first day and include the last day, unless the last day falls upon a holiday, in which case the last day is also excluded." (*People v. Englehardt* (1938) 28 Cal.App.2d 315, 317 [citing former Pol. Code, § 12]; Code Civ. Proc., § 12; see, e.g., *Englehardt*, at pp. 316–318; *People v. Miller* (1933) 130 Cal.App.191, 193; *People v. Nunley* (1904) 142 Cal. 441, 442.)

That said, even though the prosecutor erred by misstating the proper way to calculate the 14-day period, "we may not reverse the judgment if it is

not reasonably probable that a result more favorable to the defendant would have been reached in its absence." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1133, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) Applying this standard to this record, we cannot conclude it is reasonably probable that a result more favorable to defendant would have been reached without the claimed error.

The presumption permitted the jury to make an inference about the specific intent required in this case. (CACI No. 3002.) Setting aside that presumption, contrary to defendant's claim that there was no evidence or weak evidence of the requisite intent aside from the presumption, the record discloses strong evidence of defendant's intent to evade the court's process when he failed to appear.[5]

Defendant signed an OR agreement agreeing to comply with court orders, and on the stand he acknowledged he was released on his word that he would appear in court when ordered to. Portions of the transcript of the

---

[5] If, as the law requires, August 23 were counted as the first day, then September 5 (the day defendant was arrested) would have been the fourteenth day, and September 6 (the date defendant actually appeared in court) would have been the fifteenth day after the day he missed his August 22 court date. Defendant presents no developed argument why, under this calculus, the trial court erred in refusing to find the presumption inapplicable as a matter of law, and by allowing the jury to decide whether the presumption applied. On this point, we note there was no evidence defendant intended to appear in court on September 5. Defendant's own testimony was that he forgot about the court date. The only reasonable inference from his testimony is that he would not have appeared on the fourteenth day, or even on the fifteenth day after August 22, had he not been arrested. Thus, application of the presumption turns on the question of whether defendant's failure to appear was willful. (§ 1320(b).) Defendant did not advance an argument in his appellate briefs that he was prejudiced by the alleged prosecutorial misconduct because of lack of evidence related to the element of willfulness.

hearing at which defendant signed that OR agreement were read into evidence. That transcript reflected all of the following: After receiving defendant's affirmation that he was listening, the trial court told him he was being released on supervised OR and instructed him to report to probation immediately. Defense counsel informed the court that she went through all the conditions with defendant, and indicated that defendant would additionally read and sign the OR agreement form. After this dialog, the court told defendant in plain words: "I'm ordering you to comply with all of these conditions, Mr. Lopez. And you need to take them very seriously because if you violate any of them, you'll be right back in here . . . . And I'm putting you on supervised OR. That means as soon as you are released from the jail, you need to report to the Probation Department."

Despite the clarity of the foregoing admonishments, defendant failed to report to probation after being released on OR. He then waited over a week to call the probation officer who had left him a message, and he claimed he did not know he was on supervised OR release. This violation of the OR agreement resulted in a bench warrant, which defendant succeeded in having the trial court recall. Thereafter, despite being present at his July 19 hearing where the court ordered him to appear on August 22, he again showed a disregard of the court's orders by failing to appear on that date.

Like his past claim of not knowing he was on supervised OR, defendant asserted he did not know he had court on August 22. He claimed he did not know he had court due to his undiagnosed memory problems. But defendant's claim of having "memory problems" was selective and self-serving given his apparent recall of and compliance with other terms of his OR release agreement. For example, he complied at least partially with orders to test three times a week by testing nine or ten times between July 6 and

15

August 22, 2018, and he managed to remember to appear in court on July 19, 2018. In any case, defendant's explanation appeared less than credible because when asked by the prosecutor if his testimony was that his "memory problems" caused him not to come to court, defendant responded with a noncommittal "[m]ore than likely."

Defendant's testimony demonstrated a cavalier approach toward adhering to his OR agreement and complying with important court orders. Defendant failed to report to probation after repeatedly being told to do so, which resulted in his first bench warrant. Defendant testified that when he moved two months before the August 22 hearing, he brought "[e]verything" with him, except his court paperwork which was "probably tossed in the transition." When asked if he would have come to court had he known a second warrant issued for his non-appearance, he again replied with a noncommittal "more than likely." During closing argument, defense counsel attempted to downplay defendant's noncompliance, arguing: "I'm not saying that it's not irresponsible, okay? It's careless. It is what it is, right?" But the evidence reflected a defendant who did not care much, if at all, about abiding by the terms of his OR agreement or following the court's clear and unambiguous orders. The fact that defendant achieved evasion of the court's process by this cavalier attitude, rather than by concocting a precise scheme, does not demonstrate a lack of intent to evade the court's process, or lack of willfulness as suggested at oral argument. Considered as a whole, the evidence reflected a defendant who failed to appear in court by design.

In his opening brief, defendant ignores the foregoing evidence, opting instead to claim there was *no* evidence whatsoever to support a finding of the requisite intent apart from the presumption. We disagree. As the prosecutor

16

emphasized during closing argument, there was "plenty of other evidence" beside the presumption.[6]

Finally, defendant acknowledges the claimed prosecutorial misconduct is an error of state law subject to harmless error analysis under *Watson*. But he argues that *Chapman* should also apply because the prosecutor's misconduct was tied to the court's failure to instruct the jury. He asserts that "[w]hen errors of constitutional magnitude combine with non-constitutional errors, all errors should be reviewed under the *Chapman* standard of prejudice." Given our rejection of the instructional error claim, however, we decline to apply the *Chapman* standard here.

The claim of prosecutorial misconduct is rejected.

## B. Imposition of Fines, Fees, and Assessments

The trial court imposed a $560 presentence report fee (§ 1203.1b), a $300 restitution fine (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8), and a $30 court facilities assessment (Gov. Code, § 70373). Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant

---

[6] During oral argument, defendant suggested the evidence showed he was only civilly negligent in failing to appear. This argument, however, was never made in defendant's opening appellate brief. In his reply brief, defendant did contend the People "formulate[d] appellant's mental state using the terms of civil negligence," but defendant himself never presented a developed argument as to how the evidence established a "civil negligence" mentality or how such concept is relevant to the issue of whether he acted willfully or with intent to evade the process of the court. Although defendant may have been referring to negligence in some colloquial sense, we note civil negligence is generally concerned with whether a person acts according to some applicable standard of care. (See, e.g., CACI No. 401.) In any event, the point is not properly raised, and we decline to consider it further. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1185 [" 'We will not consider an issue not mentioned in the briefs and raised for the first time at oral argument.' "].)

contends the trial court violated his due process rights by imposing these fines, fees, and assessments without determining his ability to pay them.

Defendant, however, did not object to any of these fines or fees at the February 22, 2019 sentencing hearing, which took place about a month and a half after *Dueñas* was decided. Because a timely objection below was required to preserve the claim (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1155; *People v. Trujillo* (2015) 60 Cal.4th 850, 855–859), defendant's failure to make a timely and appropriate objection at the hearing forfeits review of the claim on appeal.[7]

In his reply brief, defendant acknowledges the timing of the *Dueñas* decision and belatedly asks that we "waive the forfeiture rule based on ineffective assistance of counsel." Aside from this single sentence, however, he makes no further mention of the ineffective assistance claim. Given the lateness and insufficiency of the claim's presentation, we decline to consider it. (*Paterno v. State of California, supra,* 74 Cal.App.4th at p. 106.)

In sum, we reject defendant's challenges to the fines and fees.

## DISPOSITION

The judgment is affirmed.

---

[7] Defendant suggests, mainly in a heading preceding discussion of the section 1203.1 fee, that the section 1203.1 fee was imposed in violation of the statute's requirements that the probation officer determine a defendant's ability to pay. Defendant does not develop this claim and appears to acknowledge that the probation department recommended imposition of the fee after reviewing his work history and income sources. Lack of clear argument supporting a statutory violation claim forfeits its review on appeal. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) In any event, to the extent defendant is claiming a statutory violation, defendant's failure to object to the fee waives the claim on appeal. (*People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1071–1072, 1075.)

_____

                              FUJISAKI, J.

We concur.

_____

SIGGINS, P.J.

_____

JACKSON, J.

(A157030)

19